1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SEVERINO URSUA,

11              Plaintiff,                    No. 2:11-cv-2417 EFB

12        vs.

13   CAROLYN W. COLVIN,[1] Acting
     Commissioner of Social Security,

14

15              Defendant.                    ORDER
     _____/

16        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

18   XVI of the Social Security Act.  The parties' cross-motions for summary judgment are pending.

19   For the reasons discussed below, the court grants the Commissioner's motion and denies

20   plaintiff's motion.

21   ////

22   ////

23   ////

24

25        [1]  Michael J. Astrue was previously named defendant.  Carolyn W. Colvin is presently the
     acting Commissioner of Social Security.  Accordingly, the court now substitutes in Carolyn W.
26   Colvin as defendant.  *See* Fed. R. Civ. P. 25(d).

1

I.      BACKGROUND

Plaintiff applied for SSI benefits on March 26, 2009, alleging that he had been disabled since March 25, 2009.  Administrative Record ("AR") 114-120.  Plaintiff's application was initially denied on June 26, 2009, and upon reconsideration on August 28, 2009.  *Id.* at 59-62, 65-69.  On October 27, 2010, a hearing was held before administrative law judge ("ALJ") Timothy S. Snelling.  *Id.* at 27-56.  Plaintiff was represented by counsel at the hearing, at which he testified.  *Id.*

On December 30, 2010, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the act.[2]  *Id.* at 17-25.  The ALJ made the following specific

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert,* 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

findings:

1. The claimant has not engaged in substantial gainful activity since March 25, 2009, the application date (20 CFR 416.971 *et seq*.).[3]

2. The claimant has the following severe impairments: degenerative joint disease of the right knee, hepatitis c, hypertension, degenerative disc disease of the lumber spine with right L5-S1 radiculopathy, migraine headaches, cirrhosis of the liver, and esophageal varices (20 CFR 416.920(c)).

...

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

...

4. After careful consideration of the entire record, I finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can only occasionally kneel and climb ramps and stairs and cannot perform work requiring fine visual acuity.

...

5. The claimant is capable of performing past relevant work as a bingo caller. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

...

6. The claimant has not been under a disability, as defined in the Social Security Act, since March 25, 2009, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 19-25.

Plaintiff's request for Appeals Council review was denied on July 29, 2011, *id.* at 12,

leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-3.

////

////

---

[3] The ALJ stated that plaintiff filed his disability application on March 25, 2009; however, the record reveals that plaintiff actually filed his disability application on March 26, 2009. AR 114.

II.  <u>LEGAL STANDARDS</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.  <u>ANALYSIS</u>

Plaintiff argues that the ALJ erred in (1) classifying plaintiff's work as a bingo caller as past relevant work, (2) failing to make specific findings of fact regarding visual requirements of the bingo caller occupation, and (3) failing to adopt the state agency medical consultant N.J. Rubaum's opinion that plaintiff suffered from limited near and far acuity.

A.    <u>Plaintiff's Past Work as a Bingo Caller</u>

Plaintiff argues that the ALJ erred when he classified plaintiff's work as a bingo caller as past relevant work.  Specifically, he asserts that he earned less than the amount required to create the  presumption of "substantial gainful activity."  Pl.'s Mot. for Summ. J., Dckt. No. 16 at 7-11.

1    The ALJ found that plaintiff made more than $500 per month working as a bingo caller between

2    1995 and 1996.  *Id*. at 8-10.  Plaintiff contends that this finding misinterprets the evidence that

3    was before the ALJ.  Plaintiff claims that during this period he made additional income working

4    as laborer, and that his income from working as a bingo caller only totaled approximately $110 a

5    week.  *Id*. at 9.

6         The evidence before the ALJ included plaintiff's testimony and his Work History Report.

7    That report clearly indicates that plaintiff earned $110 per day working 5 hours per day, two

8    days per week, as a bingo caller in 1995-1996.  AR 145.  Thus, based on that report plaintiff

9    earned more than $500 per month.  Plaintiff, however, now alleges that the claims examiner who

10   interviewed plaintiff and prepared the form on his behalf mistakenly wrote $110 per day, but

11   also handwrote the word "two" above the box checked "day" when describing the frequency of

12   pay.  Dckt. No. 16-1 at 9-10.  Plaintiff claims that the notation with the word "two" should be

13   read to mean that he earned $110 every two days and therefore his average monthly income from

14   the bingo caller position was approximately $440.  AR 189.  In response, defendant argues that

15   the notations says "tips," not "two"[4]  Dckt. No. 19 at 5.

16   ////

17   ////

18   ////

19   ////

20

21

22   [4] Plaintiff appears to argue that the ALJ erred by not ordering a detailed earnings report.
     Dckt. No. 16-1 at 10.  Because plaintiff did not bring the alleged "mistake" to the attention of the
23   ALJ prior to issuance of his decision, it would have been illogical for the ALJ to base his
     decision on the alleged "discrepancy" or to seek clarification.  Additionally, the court finds that
24   the word above "Day" says "tips," not "two."  Regardless, there is no way the ALJ would have,
     or should have, known that plaintiff simultaneously worked two positions between 1994 and
25   1996 since plaintiff's Work History Report only indicates that he worked as a bingo caller during
     that time.  Thus, plaintiff's argument that the ALJ should have ordered a detailed earnings
26   summary lacks merit.  Furthermore, as discussed below, any error concerning plaintiff's ability
     to return to work as a bingo caller was, at most harmless.

The court has carefully examined the report and can find no support for plaintiff's assertion that the notation entered is the word "two." Rather, the handwritten entry does appear--as defendants argue--to spell the word "tips."[5] Furthermore, it is plaintiff who bears the burden of proof on the issue. *See Yuckert*, 482 U.S. at 146 n. 5; *see also Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) ("Claimants have the burden of showing that they can no longer perform their past relevant work."). If plaintiff disagreed with the portions of the Work History Report that the claims examiner prepared or if plaintiff perceived any ambiguity with respect to his pay from various employers, it was his burden to bring that to the attention of the ALJ. *See* Application Summary for Supplemental Security Income, AR 114 ("If you disagree with any of your statements, you should contact us within 10 days after the date of this summary to let us know.") What is conspicuously absent from the record however is *any* attempt by plaintiff or his attorney to correct the alleged mistake prior to the ALJ rendering his decision in December of 2010. Significantly, plaintiff was represented and testified on his own behalf at the hearing in October 2010. When the ALJ asked plaintiff during the hearing if he "had an opportunity to tell [the ALJ] everything that [he] wanted to tell [the ALJ]," plaintiff responded, "Yes." AR 53. Additionally, plaintiff's attorney suggested she had no objections to the exhibits (including the Work History Report) being admitted into evidence. AR 30. She then made specific, substantive objections to the contents of many of the other exhibits during her opening statement, but never once mentioned the alleged "inconsistency" in the Work History Report. AR 31-32. Furthermore, plaintiff's Work History Report listed only one job between 1994 and 1996, i.e. "bingo caller." AR 142. Under these circumstances, the court cannot fault the ALJ for finding that plaintiff's prior job as a bingo caller constituted past relevant work. Indeed, the evidence before him clearly warranted that finding.

---

[5] Regardless, as discussed below, there is substantial evidence to support the ALJ's alternative finding that even if plaintiff were precluded from performing past relevant work, he is not precluded from performing other work.

6

1    After receiving the ALJ's unfavorable decision, plaintiff submitted a statement to the

2  Appeals Council in an attempted to clarify the alleged mistake, which included the following:

3      I wrote that the job consisted of 2 days a week, 5 hours a day.  Above where I
       ticked off "per day" I wrote the word "two," making maybe up to $50 a night,
4      $110 a week, $440 a month.  This is an estimated guess, as the tips were always
       varied.  I never knew how much I would get for the shift.
5

6  AR 189.

7    The Appeals Council found that this evidence did not provide a basis for changing the

8  ALJ's decision.  *Id.* 1-3.  Plaintiff's statement is part of the administrative record and the court is

9  obligated to consider this evidence in determining whether the Commissioner's final decision is

10 supported by substantial evidence.  *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163

11 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to

12 review a decision of the ALJ, that evidence becomes part of the administrative record, which the

13 district court must consider when reviewing the Commissioner's final decision for substantial

14 evidence.").  Nonetheless, this evidence does not disrupt the Commissioner's disability

15 determination.

16    "Past relevant work" is work that a claimant has "done within the past 15 years, that was

17 substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20

18 C.F.R. § 416.960(b); *see also* 20 C.F.R. § 416.965(a).  Substantial gainful activity is "work

19 activity that is both substantial and gainful[.]"  20 C.F.R. § 416.972.  "Substantial work activity

20 is work activity that involves doing significant physical or mental activities."  20 C.F.R.

21 § 416.972(a).  A claimant's work may be substantial even if it is done on a part-time basis or if

22 the claimant does less, gets paid less, or has less responsibility than when the claimant worked

23 before.  *Id.*  Gainful work activity is work activity that a claimant does for pay or profit.  20

24 C.F.R. § 416.972(b).  Average monthly earnings exceeding $500 for work performed between

25 January 1990 through June 1999 ordinarily establish substantial gainful activity.  *See* 20 C.F.R.

26 § 416.974(b)(2)(I).  Here, the ALJ correctly determined, based on the record before him, that

7

plaintiff's bingo caller job was past relevant work as that evidence showed average monthly

earnings exceeding $500.  Plaintiff's post-decision explanation to the Appeals Council attempts

to lower his monthly earning to less that $500 but is predicated on an explanation that cannot be

reconciled with the actual handwritten entry on the work report.  It simply does not state the

word "two" as argued by plaintiff.

Plaintiff argues, in the alternative, that if his work as a bingo caller constitutes past

relevant work, the ALJ erred when he failed to make specific factual findings regarding the

impact of plaintiff's visual impairments on his ability to perform the bingo caller position.  Dckt.

No. 16 at 11-12.  Although the ALJ concluded that plaintiff could perform the physical aspects

of that job, discussion of plaintiff's alleged visual impairment in the context of this finding is

lacking.  The ALJ made no findings of fact as to the visual (i.e. physical) demands of plaintiff's

bingo caller occupation.  *See* SSR 82-62; *see Pinto*, 249 F.3d at 844-45.  Having found that

plaintiff has "slightly limited vision," AR 23, the ALJ was obligated to consider and evaluate

how this non-exertional impairment would, or would not, impact his ability to work as a bingo

caller.  *See* SSR 82-62 ("Past work experience must be considered carefully to assure that the

available facts support a conclusion regarding the claimant's ability or inability to perform the

functional activities required in this work.").  The ALJ's written decision does not do that.

Regardless, the error is harmless.

Any error made by finding that plaintiff's prior work as a bingo caller was past relevant

work or that plaintiff's impairments (including visual) did not preclude such work activity was,

at most, harmless.  *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule

applies to review of administrative decisions regarding disability).  A decision of the ALJ will

not be reversed for errors that are harmless.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005).  To determine whether an error is harmless, a court looks to whether the mistake was non-

prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.  *Stout v.

Comm'r Soc. Sec. Admin.*, 454 F .3d 1050, 1055 (9th Cir. 2006).  The ALJ conducted an

1    alternative step-five determination and found that, in addition to the bingo caller position,

2    plaintiff could also perform "medium work that requires an individual [to] remain able to handle

3    and work with relatively large objects and avoid workplace hazards." SSR 85-15 and 96-9.

4    With respect to performing medium work, the ALJ also specifically stated that the "claimant's

5    visual limitation does not preclude this, therefore it does not significantly erode the medium

6    work base."

7            Thus, with respect to other jobs plaintiff can perform, the ALJ made specific findings of

8    fact related to plaintiff's visual impairments and found that there were other jobs that existed in

9    significant numbers in the national economy that the claimant could also perform. AR 24.

10   Accordingly, even though the ALJ erred in not making specific findings with respect to the

11   visual requirements of the bingo caller position, the fact that plaintiff was able to perform other

12   jobs, despite his visual impairments, renders the error harmless. Similarly, even if the bingo

13   caller position did not amount to past relevant work, the ALJ's ultimate finding that plaintiff was

14   not disabled would stand based on his step-five determination.

15           B.      The ALJ Properly Evaluated The Medical Evidence, Including the Opinion of Dr.
                     Rubaum Regarding Visual Acuity
16

17           Plaintiff next argues that the ALJ erred in his alternate step-five determination. Dckt.

18   No. 16 at 13. Specifically, plaintiff contends that the ALJ failed to provide an explanation as to

19   why he rejected Dr. Rubaum's opinion that plaintiff had far acuity limitations. *Id.* Plaintiff

20   appears to misinterpret the ALJ's decision. While it is true, as plaintiff claims, that the ALJ

21   found that plaintiff could not perform work involving very fine visual acuity, the ALJ did not

22   explicitly reject Dr. Rubaum's finding that plaintiff had impaired far acuity. Rather, in finding

23   that plaintiff could perform medium work, the ALJ considered plaintiff's overall visual

24   impairment and concluded that he maintains the "ability to handle and work with relatively large

25   objects and avoid workplace hazards." AR 25. *See* SSR 85-15 ("As a general rule, even if a

26   person's visual impairments were to eliminate all jobs that involve very good vision (such as

1    working with small objects or reading small print), as long as he or she retains sufficient visual

2    acuity to be able to *handle and work with rather large objects* (and has the visual fields to avoid

3    ordinary hazards in a workplace), there would be a substantial number of jobs remaining across

4    all exertional levels.") (emphasis added).  This finding is supported by substantial evidence in

5    the record.

6          On June 15, 2009, Dr. Rubaum found that plaintiff had limitations in far and near acuity

7    based on evidence that plaintiff's visual acuity in each eye was 20/50.  AR 235, 238.  However,

8    Dr. Rubaum also opined that plaintiff's "corrected vision was not severe."  *Id*. at 239.

9    Furthermore, on September 30, 2007, Dr. Satish Sharma, a state agency examining physician,

10   found that plaintiff had decreased vision secondary to a refractory error.  *Id*. at 197.  A visual

11   acuity test conducted from June 10, 2006, showed that plaintiff's uncorrected vision in his right

12   eye was 20/100 and his left 20/70.  *Id*. at 196.  However, the results from this test also

13   showed that plaintiff was able to move about the office without assistance.  *Id*.  The record also

14   contains medical notes from the Department of Corrections dated August 3, 2007, showing that

15   plaintiff's uncorrected vision was 20/50 in both eyes.  *Id*. at 207.  However, the note also

16   indicates that plaintiff's vision could be corrected to 20/20 in both eyes.  *Id*.

17         There is also non-medical evidence in the record supporting the ALJ's finding.  For

18   instance, at his hearing plaintiff was asked about his vision when he wears corrective lenses.  AR

19   43.  Plaintiff responded, "I can see, I can see okay."  *Id*.  Plaintiff also stated that he spends the

20   majority of his day sitting around and watching television.  AR  138.  It can be logically assumed

21   that someone who maintains the visual ability to watch television also has the functional ability

22   to work with large objects.

23         Although the ALJ did not explicitly differentiate between plaintiff's near and far acuity,

24   this failure does not render his findings invalid.  The evidence of record supports the ALJ's

25   finding that while plaintiff vision is impaired, he maintains the ability to work with relatively

26   large objects and avoid workplace hazards.

1    Thus, the ALJ did not err in determining that plaintiff's visual impairments did not

2   preclude him from performing medium work.

3   IV.  CONCLUSION

4    The court finds that the ALJ's decision is supported by substantial evidence and is based

5   on the proper legal standards.  Therefore, IT IS ORDERED that:

6        1.  Plaintiff's motion for summary judgment is denied;

7        2.  The Commissioner's cross-motion for summary judgment is granted; and

8        3.  The Clerk is directed to enter judgment in the Commissioner's favor.

9   DATED:  March 27, 2013.

10

11                               EDMUND F. BRENNAN

12                               UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26